FILED
Samuel L. Kay, Clerk
United States Bankruptcy Court
Brunswick, Georgia
By arowe at 1:13 pm, May 25, 2010

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Brunswick Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 Case |
| | ) | Number 10-20093 |
| OTTO Y. JOHNSON, III | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| PRIMESOUTH BANK | ) | Adversary Proceeding |
| | ) | Number 10-02014 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| OTTO Y. JOHNSON, III | ) | |
| | ) | |
| Defendant | ) | |

## ORDER GRANTING MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND DISCRETIONARY ABSTENTION

This matter comes before me on two motions filed by Creditor PrimeSouth Bank: (1) a Motion for Relief from the Automatic Stay and Discretionary Abstention filed in the bankruptcy case, and (2) a Motion for Discretionary Abstention filed in a related adversary proceeding (collectively, the "Motions"). PrimeSouth seeks relief from the automatic stay of 11 U.S.C. § 362(a) to allow it to pursue various claims arising under Georgia law against Debtor/Defendant Otto Y. Johnson, III in the Superior Court of Glynn County, Georgia, and to involve the Debtor in discovery proceedings relating to those claims. PrimeSouth also

⚖AO 72A
(Rev. 8/82)

requests that, pursuant to 28 U.S.C. § 1334(c)(1), this Court abstain from proceeding on its adversary proceeding against the Debtor concerning the dischargeability of certain debts until the superior court determines the Debtor's liability for those debts. Because the equitable factors favor abstention and a determination of the Debtor's liability by the superior court, the Motions are granted.

**BACKGROUND**

The Debtor filed a voluntary chapter 7 petition on January 25, 2010. (See Case Dkt. No. 1.)[1] PrimeSouth was listed as a secured creditor on the Debtor's Schedule D, with a claim in the amount of $350,000 secured against certain automobiles listed on the floor plan of the Debtor's automobile sales business, Seaside Auto Sales, Inc. ("Seaside"). (Id. at 12.)

PrimeSouth alleges that the Debtor was the sole shareholder and operator of Seaside.[2] (Case Dkt. No. 38 at 1.) Seaside had a floor plan agreement with PrimeSouth that allowed Seaside to purchase and sell automobiles. (Id.) Seaside defaulted under the terms of the floor plan and on or about December 11, 2009,

---

[1] References to the chapter 7 case docket appear in the following format: "Case Dkt. No. __." References to the adversary proceeding docket appear in the following format: "A.P. Dkt. No. __."

[2] This paragraph is based upon the factual allegations made by PrimeSouth in its Motions. These allegations do not constitute findings of fact by this Court.

2

PrimeSouth repossessed all automobiles that had been pledged to PrimeSouth under the floor plan. (Id.) At that time, PrimeSouth discovered that at least sixteen automobiles covered under the floor plan had been sold by Seaside "out-of-trust," meaning that those automobiles had been sold without PrimeSouth's knowledge and without any payments having been made to PrimeSouth on account of those sales. (Id. at 2.)

On April 1, 2010, PrimeSouth filed suit against several defendants, including Seaside, in the Superior Court of Glynn County, Georgia. (See id., Ex. A.) The complaint contains various claims against the defendants arising under Georgia law, including default on a promissory note, breach of contract, breach of the warranty of good faith and fair dealing, breach of fiduciary duty, conversion, fraud, and violation of Georgia's RICO statute. (Id. at 5, 15-29.) The Debtor is not named as a defendant.

On April 14, 2010, PrimeSouth filed a complaint initiating an adversary proceeding against the Debtor (see A.P. Dkt. No. 1) and filed its Motions (see Case Dkt. No. 38; A.P. Dkt. No. 3). The complaint sought a determination as to the dischargeability of debts under subsections (2), (4), and (6) of 11 U.S.C. § 523(a).[3] The Motions seek relief from the automatic stay of 11

---

[3] 11 U.S.C. § 523(a) states in pertinent part:
(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

3

U.S.C. § 362(a) and abstention by this Court pursuant to 28 U.S.C. § 1334(c)(1) in order to allow PrimeSouth to add the Debtor as a party to the superior court suit and to allow the Glynn County Superior Court to determine the Debtor's liability under the various causes of action at issue in that case. The Motions request that this Court retain jurisdiction over the issue of dischargeability, with adjudication of that issue being postponed until after the superior court makes a determination as to the Debtor's liability (or lack thereof). (A.P. Dkt. No. 3 at 6.)

## DISCUSSION

Under 28 U.S.C. § 1334(c)(1), bankruptcy courts have discretion to abstain from hearing a proceeding arising in or related to a bankruptcy case if abstention is "in the interest of

---

...
  (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
    (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
    (B) use of a statement in writing—
      (i) that is materially false;
      (ii) respecting the debtor's or an insider's financial condition;
      (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
      (iv) that the debtor caused to be made or published with intent to deceive;
  ...
  (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;
  ...
  (6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

4

justice, or in the interest of comity with State courts or respect for State law."[4] In deciding whether discretionary abstention is warranted, courts in this district consider the following factors:

(1) the effect of abstention on the efficient administration of the bankruptcy estate;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden on the bankruptcy court's docket;
(10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of non-debtor parties;
(13) comity; and
(14) the possibility of prejudice to other parties in the action.

Rayonier Wood Prods., L.L.C. v. ScanWare, Inc., 420 B.R. 915, 920 (S.D. Ga. 2009).

---

[4] 28 U.S.C. § 1334(c)(1) states as follows:
Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

5

The second, fourth, seventh, and eighth factors strongly support abstention. In this case, the issue of the nature of Debtor's liability is purely a matter of state law. The Debtor admitted at hearing that he is liable for any debts owed to PrimeSouth by Seaside as a guarantor, but whether there exist other bases for liability that would preclude discharge of those debts under 11 U.S.C. § 523(a)(2), (4), or (6) is a determination that must be made in reference to state law theories of liability. There is already a case pending in the Superior Court of Glynn County, Georgia, in which these issues will be adjudicated. The Debtor has stated that he will cooperate in the discovery process of that case, and has appeared in his capacity as an officer of Seaside at each hearing.

Severing state law liability issues from core bankruptcy matters is available in this district. See Rayonier Wood Prods., L.L.C., v. ScanWare, Inc. (In re ScanWare, Inc.), 411 B.R. 889, 898-99 (Bankr. S.D. Ga. 2009) (abstaining on issues of liability and damages under state law while retaining jurisdiction over the enforcement of claims under bankruptcy law); Rentrak Corp. v. Cady (In re Cady), Nos. 93-50258, 93-05024, 1994 WL 16001762, at *3 (Bankr. S.D. Ga. Mar. 11, 1994) (abstaining as to the determination of liability for breach of contract, conversion, and contribution under state law but retaining jurisdiction over bankruptcy issues). The state law liability issues can be

6

severed from the dischargeability determination, and there already exists a superior court case in which those issues can be tried. I thus find that the ability to sever state law and bankruptcy issues favors abstention in the present case.

Additionally, the other relevant factors favor abstention. Abstention will have no effect on the administration of the bankruptcy estate given that this is a no asset chapter 7 case (factor 1). The determination of state law liability is not so closely related to the issue of dischargeability that it cannot be severed, as previously discussed (factor 6). There exists a right to a jury trial in the state court action and, if abstention was not granted here, that right could be asserted in this action, requiring referral of the matter to the district court at least as to a determination of debt and the nature of that liability (factor 11). There are numerous non-debtor parties involved in this matter, and they are already participating in the state court case (factor 12). Because the foregoing factors all support abstention,[5] I find that

---

[5] The remaining factors have no impact on this determination. Although there appear to be complicated factual issues with regard to automobiles that were allegedly sold out-of-trust, there is nothing to suggest that Georgia law is unsettled as to any of the state law causes of action (factor 3). There is no basis for jurisdiction outside of 28 U.S.C. § 1334 (factor 5). Whether or not a trial before this Court on dischargeability—including state law liability issues—is eventually required, there is no real effect on this Court's docket, and severing state law issues could potentially avoid duplicative trials in both state and federal courts (factor 9). There is no evidence of forum shopping by the Debtor (factor 10). Comity and prejudice to other parties are not relevant given that the Debtor has agreed to fully participate in the

7

discretionary abstention under 28 U.S.C. § 1334(c)(1) is appropriate and that it is in the best interests of all parties that the Debtor's liability under state law be determined by the Superior Court of Glynn County. I therefore abstain from the determination of the Debtor's liability for the pertinent claims under Georgia law while retaining jurisdiction over the issue of dischargeability under § 523(a).

## CONCLUSION

The circumstances of this case warrant abstention under 11 U.S.C. § 1334(c)(1) as to the Debtor's liability for certain debts under Georgia law. It is therefore **ORDERED** that PrimeSouth's Motion for Relief from the Automatic Stay and Discretionary Abstention is **GRANTED** to the extent that PrimeSouth may add the Debtor as a party defendant to Case No. CE10-00587-063 in the Superior Court of Glynn County, Georgia, fully involve the Debtor in discovery matters relating to that case, and proceed to a final nonappealable judgment. It is **FURTHER ORDERED** that this Court shall stay consideration of the issues in Adversary Proceeding No. 10-02014 until completion of the

---

discovery process, either in this Court or in the superior court (factors 13 and 14).

8

foregoing superior court case.

                                                      JOHN S. DALIS
                                                     United States Bankruptcy Judge

Dated at Brunswick, Georgia,
this _____ day of May, 2010.

9